UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BILLIE M. ROMANO,<br><br>　　　　Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>　　　　Defendant. | No. CV-09-252-JPH<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR 42 U.S.C. § 405(g) |

BEFORE THE COURT are cross-Motions for Summary Judgment. (Ct. Rec. 11, 20.) Attorney James T. Solan represents plaintiff; Special Assistant United States Attorney Willy M. Le represents defendant. The parties have consented to proceed before a magistrate judge. (Ct. Rec. 3.) After reviewing the administrative record and briefs filed by the parties, the court **GRANTS** plaintiff's Motion for Summary Judgment and **DENIES** defendant's Motion for Summary Judgment.

**JURISDICTION**

Plaintiff Billie M. Romano (plaintiff) protectively filed for disability income benefits (DIB) and supplemental security income (SSI) on March 8, 2007. (Tr.145, 148.) Plaintiff alleged an onset date of January 23, 2006. (Tr. 145, 148.) Benefits were denied initially and on reconsideration. (Tr. 82, 85, 91, 93.) Plaintiff requested a hearing before an administrative law judge (ALJ), which was held before ALJ Robert S. Chester on February 25, 2009. (Tr. 22-77.) Plaintiff was represented by counsel and testified at the hearing. (Tr. 31-61, 72-76.) Medical expert Dr. Arthur Lorber and vocational expert Fred Cutler also testified. (Tr. 25-31, 61-70.) The ALJ denied benefits (Tr. 10-19) and the Appeals Council denied

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -1

review. (Tr. 1.) The matter is now before this court pursuant to 42 U.S.C. § 405(g).

**STATEMENT OF FACTS**

The facts of the case are set forth in the administrative hearing transcripts, the ALJ decisions, and the briefs of plaintiff and the Commissioner, and will therefore only be summarized here.

Plaintiff was 48 years old at the time of the hearing. (Tr. 31.) The highest grade she completed in school was eighth grade. (Tr. 32.) Plaintiff has work experience as a bartender, barista, security guard and cashier. (Tr. 33-37.) In 2006, plaintiff was struck by a car while she was a pedestrian. (Tr. 239.) After the accident, she experienced back and neck pain, headaches, nausea, dizziness, leg and foot pain, chest pain and dizziness. (Tr. 290.) She testified her back, neck and legs continue to be most affected. (Tr. 51.) She said she cannot concentrate, has headaches, pain in her neck, tingling and numbness down to her fingertips and numbness in her hands. (Tr. 48.) She experiences dull and stabbing pain in her low and mid back. (Tr. 49.) Both sides of her body are affected. The pain starts in the middle of her back and travels down her buttocks to her right hip, then all the way to her toes. (Tr. 49-50.) She testified she limps, and the pain is a dull pain. (Tr. 50.) Plaintiff also testified she has "frozen shoulder syndrome" which causes her shoulder to be stiff and hard to move. (Tr. 44.) Plaintiff believes she is not able to do the jobs she did before the accident due to the walking, lifting, bending, twisting, turning, kneeling and reaching required. (Tr. 58.)

**STANDARD OF REVIEW**

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler,* 760 F. 2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F. 3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan,* 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services,* 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze,* 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Human Services,* 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

## SEQUENTIAL PROCESS

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423 (d)(1)(A), 1382c (a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if his impairments are of such severity that plaintiff is not only unable to do his previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if he or she is engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -3

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he or she has performed in the past. If plaintiff is able to perform his or her previous work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's residual functional capacity ("RFC") assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy in view of his or her residual functional capacity and age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a physical or mental impairment prevents him from engaging in his or her previous occupation. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**ALJ'S FINDINGS**

At step one of the sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity since January 23, 2006, the alleged onset date. (Tr. 12.) At step two, the ALJ

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -4

found plaintiff has a severe impairment: degenerative disc disease of the lumbar and cervical spine. (Tr. 12.)   At step three, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. (Tr. 14.)  The ALJ then determined:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can only stand or walk up to 4 hours in an 8-hour workday, and she needs a change in position every hour.  She can only occasionally climb, stoop, kneel, crouch, or crawl, and never climb ropes, ladders, or scaffolds.  She should do no overhead work with her upper right extremity, and should avoid exposure to unprotected heights, or unprotected moving or dangerous machinery.

(Tr. 15.)   At step four, the ALJ found plaintiff is capable of performing past relevant work as a gate/security guard and cashier II.  (Tr. 18.)   Thus, the ALJ concluded plaintiff has not been under a disability, as defined in the Social Security Act, from January 23, 2006 through the date of the decision. (Tr. 18.)

**ISSUES**

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error.  Specifically, plaintiff asserts the ALJ erred:  (1) by rejecting the opinions of treating physicians; and (2) in evaluating plaintiff's credibility. (Ct. Rec. 12 at 8-21.)  Defendant argues the ALJ: (1) properly considered the medical opinion evidence; and (2) made a legally sufficient credibility analysis. (Ct. Rec. 21 at 6-21.)

**DISCUSSION**

**1.    Credibility**

Plaintiff argues the ALJ improperly evaluated her credibility. (Ct. Rec. 12 at 8-21.)  In social security proceedings, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice.  20 C.F.R. § 416.908.  The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms.  20 C.F.R. § 416.929.

Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of the symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -5

Cir. 1991)   If there is evidence of a medically determinable impairment likely to cause an alleged symptom and there is no evidence of malingering, the ALJ must provide specific and cogent reasons for rejecting a claimant's subjective complaints. *Id.* at 346.  The ALJ may not discredit pain testimony merely because a claimant's reported degree of pain is unsupported by objective medical findings. *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989).  The following factors may also be considered: (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) claimant's daily living activities; (4) claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition.  *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

If the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Morgan v. Apfel*, 169 F.3d 595, 601-02 (9th Cir. 1999).  In the absence of affirmative evidence of malingering, the ALJ's reasons must be "clear and convincing." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038-39 (9th Cir. 2007); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *Morgan*, 169 F.3d at 599.  The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)(citation omitted).

The ALJ stated there are "many inconsistencies between the claimant's statements and the objective medical evidence that undermine the claimant's credibility" and found plaintiff's statements are not credible. (Tr. 16.)  As a result, the ALJ also concluded plaintiff's statements concerning her pain, symptoms and limitations are not persuasive. (Tr. 16.)  The ALJ gave three reasons for the negative credibility finding. (Tr. 16.)

First, the ALJ concluded the medical evidence does not show a change in the plaintiff's condition which would account for increased restrictions and limitations described at the hearing. (Tr. 16.) One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record. SSR 96-7p.  The ALJ pointed out that plaintiff testified that she has significant back pain and spends most of the day watching t.v., but she

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -6

rated her back pain as 2-3/10 with medication. (Tr. 16.) Plaintiff testified the only thing she does for entertainment now is watch soap operas. (Tr. 54.) The ALJ is correct that in August 2008, plaintiff rated her daily average pain as 2-3/10 with medication. (Tr. 374.) Dr. Emery noted plaintiff's pain "flares the more active she is." (Tr. 374.) Although plaintiff indicated she could do light housework, vacuuming really aggravated her pain. (Tr. 374.) However, the ALJ did not mention that at plaintiff's next visit with Dr. Emery in November 2008, she reported that her pain became severe within 45 minutes of Dr. Rose's September 2008 exam. (Tr. 369.) According to plaintiff, Dr. Rose required her to do things that severely exacerbated her pain for three weeks and she had not returned to her previous level of pain relief. (Tr. 369.) Without medication, she rated her pain as 8/10, and with medication her pain averaged 5/10. (Tr. 369.) Dr. Emery's November 2008 record contains a description of increased pain and an explanation for the increase. The ALJ did not discuss the November 2008 evidence of increased pain or its alleged cause. Thus, the purported inconsistency is not supported by the record and does not support the ALJ's conclusion that plaintiff's activities are inconsistent with her reported pain level.

      The ALJ also cited a note indicating plaintiff swims as much as possible, presumably as evidence that plaintiff is more active than alleged. (Tr. 16.) Evidence about daily activities is properly considered in making a credibility determination. *Fair*, 885 F.2d at 603. However, a claimant need not be utterly incapacitated in order to be eligible for benefits. *Id.* Many activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be possible to rest or take medication. *Id.* While it is true that plaintiff mentioned to Dr. Emery that she, "Tries to swim as much as possible," plaintiff correctly points out that the record contains no evidence indicating how much or how often plaintiff swims. (Ct. Rec. 12 at 18.) Defendant argues that the ALJ made a reasonable and permissible inference in concluding that the ability to swim at all may suggest a higher activity level than alleged. (Ct. Rec. 21 at 19.) To the contrary, swimming is the type of low-impact activity which can be done at a pace and level consistent with an individual's abilities. Even if plaintiff is swimming regularly (and there is no evidence that she is), it is not reasonable to conclude, without more, that she is engaging in activities inconsistent with her alleged symptoms or inconsistent with an ability to work. Thus, the swimming

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -7

evidence does not support the ALJ's conclusion that plaintiff is engaging in an activity inconsistent with her testimony.

The ALJ also observed that plaintiff and her husband reported that plaintiff likes to paint on disability questionnaires, but at the hearing said she does not paint any more. (Tr. 16.) In April 2007, plaintiff reported that her hobbies and interests include painting with watercolors and watching television and movies. (Tr. 185.) When asked how often and well she does those activities, plaintiff wrote, "Not often, I think I paint pretty good cannot sit through whole movie." (Tr. 185.) She described changes in those activities since her accident as, "Cannot sit very long and use arms." (Tr. 185.) Plaintiff's husband also completed a disability report and noted her hobbies and interests including painting and watching television or movies. (Tr. 176.) When asked how often and how well she does these activities, Mr. Romano wrote, "Daily, very well." (Tr. 176.) He reported plaintiff paints more since her accident due to a lack of ability to do more physical activities. (Tr. 176.) At the hearing, plaintiff testified that, "I painted and I'm a right hand person so I do not any longer paint." (Tr. 54.) She said she does not paint anymore because she cannot use her right arm satisfactorily. (Tr. 54.)

There is an inconsistency among plaintiff's report, her husband's report, and plaintiff's testimony about the frequency of her painting. Plaintiff argues the discrepancy is "minimal" and "slight," but does not acknowledge the contradiction of plaintiff's husband stating she paints more often since the accident ("daily") while plaintiff says she does not paint at all. (Ct. Rec. 12 at 14.) The ALJ's point is not that plaintiff is engaging the activity of painting in spite of her condition, but that she may be exaggerating the effect of her symptoms over time without any intervening change in condition. (Tr. 16.) However, the greater question is whether the ALJ's first reason for rejecting plaintiff's testimony is a clear and convincing reason supported by substantial evidence. The court concludes that the "painting evidence," while perhaps suggestive of some exaggeration, does not itself constitute substantial evidence supporting a clear and convincing reason for rejecting plaintiff's testimony. Thus, the ALJ's first reason for rejecting plaintiff's credibility is not adequately supported.

The second reason given by the ALJ for rejecting plaintiff's testimony is that plaintiff's

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -8

credibility is undermined by demonstration of a willingness to exaggerate pain behavior. (Tr. 16.). In making a credibility evaluation, the ALJ may rely on ordinary techniques of credibility evaluation. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). In support, the ALJ indicates that plaintiff described her problem as a "broken back," but Dr. Hirschauer said the MRI of her lumbar spine looked "surprisingly good" with minimal disc extrusion. (Tr. 16, 198, 438.) It is not clear that this was an "exaggeration" by plaintiff rather than a lack of understanding of terminology. There is no evidence supporting an inference this was an attempt to mislead or overstate plaintiff's condition because plaintiff's description of her injury as a "broken back" is contained in a report listing her physicians and the medical facilities from which records could be obtained. (Tr. 197-206.) Furthermore, the comparison of plaintiff's statement to one line in Dr. Hirschauer's report does not lead to the reasonable conclusion that plaintiff was "exaggerating" her pain behavior. Dr. Hirschauer also noted an MRI revealed "diffuse cervical disc degeneration" and observed pain on manipulation of plaintiff's shoulder. (Tr. 438.) The ALJ's inference from plaintiff's statement and a line in Dr. Hirschauer's report is not supported by the record, and this does not constitute evidence justifying a negative credibility finding.

The ALJ also cited the report of Dr. Rose in support of his conclusion that plaintiff's pain behaviors are exaggerated. (Tr. 16.) Dr. Rose examined plaintiff in September 2008. (Tr. 328-337.) Dr. Rose found plaintiff's "physical complaints as mentioned are far in excess of the physical findings and her behaviors as witnessed outside of the examination parameters do not correlate with appearance during the interview and/or examination." (Tr. 331.) Dr. Rose indicated that plaintiff's demeanor and behaviors changed during the examination. (Tr. 329.) He noted that plaintiff's overall head and neck motions were much more fluid and there was no evidence of restriction of activity upon leaving the office. (Tr. 329.) He also observed that she reached overhead and behind her to grab a seatbelt and attach it upon her departure. (Tr. 329.) This evidence was reasonably considered by the ALJ in considering plaintiff's credibility.

However, plaintiff disputes Dr. Rose's report. (Ct. Rec. 12 at 16-17.) Plaintiff testified that within 45 minutes of leaving Dr. Rose's office, she contacted the agency that required her to see him. (Tr. 53.) In October 2008, shortly after her visit with Dr. Rose, plaintiff wrote a letter to the Division

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -9

of Disability Determination Services complaining about Dr. Rose's treatment of her during the exam. (Tr. 231.) In November 2008, Dr. Emery also recorded plaintiff's complaints about Dr. Rose's exam. (Tr. 369.) Nonetheless, as defendant points out, plaintiff does not dispute Dr. Rose's account of plaintiff's behavior changes or ability to grasp her seatbelt in a manner inconsistent with her complaints. (Ct. Rec. 21 at 16.) Where the evidence conflicts, it is the ALJ's duty to resolve the ambiguity. *See Morgan v. Commissioner*, 169 F.3d 595, 599-600 (9th Cir. 1999). Despite plaintiff's complaints about Dr. Rose, the ALJ reasonably considered the information in the report in making the credibility determination.

       The third reason noted by the ALJ in finding plaintiff not credible is that an absence of corroborating objective medical evidence compromises her credibility. (Tr. 16.) The ALJ cited plaintiff's complaints of numbness and weakness in her arms and legs and asserted these were not reported on examination. (Tr. 16.) According to the ALJ, plaintiff's sensations and muscle strength were normal on repeat evaluations. (Tr. 16.) However, plaintiff points out that a number of records reflect objective evidence of numbness or weakness. (Ct. Rec. 12 at 17.) Dr. Fazzini found decreased sensation at L5 and S1 in February 2006.[1] (Tr. 308.) In September 2007, Plaintiff's physical therapist noted a neurological deficit indicated by some decreased sensation to light touch in both arms and decreased sensation in left foot in big toe. (Tr. 407.) Dr. Anderson noted decreased sensation and reflexes in September 2007. (Tr. 393.) Dr. Hirschauer's November 14, 2007 office notes reflect decreased sensation in the hand and legs. (Tr. 438.) In February 2009, Dr. Emery

---

[1] Plaintiff argues the ALJ failed to fully and completely evaluate the opinion of Dr. Fazzini. (Ct. Rec. 12 at 10, Tr. 307-10.) Defendant argues Dr. Fazzini's opinion was not before the ALJ and therefore could not have been considered. (Ct. Rec. 21 at 17, Tr. 442-47.) Defendant points to the order of the of Appeals Council adding Dr. Fazzini's opinion to the record as Exhibit 19F. (Tr. 4.) However, comparison of Exhibit 9F and Exhibit 19F reveals they are identical narrative reports from Dr. Fazzini, but Exhibit 19F contains two additional pages of test results and one page which was not part of Dr. Fazzini's report. (Tr. 442-47.) Dr. Fazzini's narrative report was therefore before the ALJ and was actually referenced by the medical expert during the hearing. (Tr. 26.)

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -10

reported that nerve conduction studies were remarkable for L5 denervation. (Tr. 440.) Defendant concedes the record reflects objective reports showing significant numbness or weakness on examination and that the ALJ erred. (Ct. Rec. 21 at 20.) As a result, the ALJ's third justification for the negative credibility finding is not supported by substantial evidence.

The ALJ's credibility determination is not justified by clear and convincing reasons supported by substantial evidence. Dr. Rose's report does not by itself constitute clear and convincing reasons supported by substantial evidence supporting the negative credibility determination. Because the credibility finding is not supported by substantial evidence, the ALJ erred.

**2.     Opinion Evidence**

Plaintiff argues the ALJ improperly rejected the opinion of Dr. Emery, a treating physician. (Ct. Rec. 12 at 10-12.) Dr. Emery began treating plaintiff in August 2008 at the Rockwood Clinic after her previous treating physician, Dr. Anderson, left the practice. (Tr. 374, 378.) After office visits with plaintiff in August and November 2008, Dr. Emery prepared a letter dated February 13, 2009, documenting plaintiff's current symptoms, medical treatment and his assessment of her limitations. (Tr. 369, 374, 440.) Dr. Emery indicated plaintiff is unable to do any type of lifting or repetitive work and is limited to intermittent light work around the house. (Tr. 440.) He noted she has not changed or improved in the past year and therefore, he "would place her in a category of maximal medical improvement." (Tr. 440.) Due to her significant limitations, Dr. Emery opined she is not able to attain or maintain gainful employment, including part-time employment. (Tr. 440.) The ALJ gave little weight to Dr. Emery's opinion. (Tr. 17.)

In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). Historically, the courts have recognized conflicting medical evidence, the absence of regular

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -11

medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain as specific, legitimate reasons for disregarding a treating or examining physician's opinion. *Flaten v. Secretary of Health and Human Servs.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995); *Fair*, 885 F.2d at 604.

If a treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). However, if contradicted, the ALJ may reject the opinion if he states specific, legitimate reasons that are supported by substantial evidence. *See Flaten v. Secretary of Health and Human Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989); *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989).

Dr. Emery's opinion is contradicted by the opinion of the medical expert, Dr. Lorber. Dr. Lorber testified that the limitations assessed by Dr. Emery do not correspond to the actual physical limitations identified on examination. (Tr. 30.) Therefore, the ALJ was required to provide specific, legitimate reasons supported by substantial evidence in rejecting Dr. Emery's opinion.

The ALJ gave several reasons for rejecting Dr. Emery's opinion. (Tr. 17.) First, the ALJ concluded Dr. Emery's February 2009 opinion is inconsistent with his treatment notes. (Tr. 17.) A physician's opinion may be rejected if it is unsupported by the physician's treatment notes. *See Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003) (affirming ALJ's rejection of physician's opinion as unsupported by physician's treatment notes). The ALJ pointed out that Dr. Emery reported that plaintiff's pain was 2-3/10 and she was able to do light housework and swim in August 2008, yet in February 2009, a few months later opined she was not able to maintain gainful employment. (Tr. 17, 374, 440.) However, the ALJ failed to acknowledge or discuss plaintiff's intervening November office visit with Dr. Emery at which she described her pain as 5/10 with medication and 8/10 without medication. (Tr. 369.) Plaintiff also explained she was not at her previous level of pain relief. (Tr. 369.) Dr. Emery's November notes support his February opinion. Therefore, the ALJ's first reason for rejecting Dr. Emery's opinion is not supported by substantial evidence.

The second reason given by the ALJ is that Dr. Emery's reports fail to reveal the type of

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -12

significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled. (Tr. 17.) A medical opinion may be rejected by the ALJ if it is conclusory, contains inconsistencies, or is inadequately supported. *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Thomas*, 278 F.3d at 957. Dr. Emery listed the evidence contributing to his opinion that plaintiff is disabled in his letter of February 13, 2009: during the year after plaintiff's accident, she was seen by multiple specialists including neurosurgery, neurology, physiatry, orthopedics, and chiropractics; she underwent cervical and lumbar MRIs which showed evidence of multilevel cervical degenerative changes and an L2-3 herniation which was noted to abut the left L3 nerve root; she underwent nerve conduction studies which were remarkable for L5 denervation; and he described her pain symptoms. (Tr. 440.) Dr. Emery pointed out the clinical and laboratory abnormalities contributing to his opinion, and the ALJ's assertion that he failed to do so is not supported by the opinion or the record. As a result, the ALJ's second reason for rejecting Dr. Emery's opinion is not based on substantial evidence.

The ALJ also mentioned possible motives underlying Dr. Emery's opinion, including sympathy for the Plaintiff or a desire to satisfy Plaintiff's request in order to avoid tension. (Tr. 17.) The ALJ noted, "While it is difficult to confirm the presence of such motives, they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, as in the current case." (Tr. 17.) The ALJ's reasoning is speculative and without basis in the record. To the extent the ALJ relied on speculation about Dr. Emery's motives in rejecting the opinion, the ALJ erred.

The last reason given by the ALJ is that Dr. Emery's opinion is without substantial support from the other evidence of record. (Tr. 17.) The consistency of a medical opinion with the record as a whole is a relevant factor in evaluating a medical opinion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). However, the ALJ failed to adequately explain how the other evidence of record undermines Dr. Emery's opinion.

In particular, the ALJ failed to explain why the opinion of Dr. Lorber, the medical expert, should be given "significant weight" over the opinion of Dr. Emery, a treating physician. The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -13

rejection of the opinion of either an examining physician or a treating physician. *Lester*, 81 F.3d at 831, citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990). However, the opinion of a non-examining physician may be accepted as substantial evidence if it is supported by other evidence in the record and is consistent with it. *Andrews*, 53 F.3d at 1043; *Lester*, 81 F.3d at 830-31. Cases have upheld the rejection of an examining or treating physician based on part on the testimony of a non-examining medical advisor; but those opinions have also included reasons to reject the opinions of examining and treating physicians that were independent of the non-examining doctor's opinion. *Lester*, 81 F.3d at 831, citing *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989) (reliance on laboratory test results, contrary reports from examining physicians and testimony from claimant that conflicted with treating physician's opinion); *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995) (rejection of examining psychologist's functional assessment which conflicted with his own written report and test results). Thus, case law requires not only an opinion from the consulting physician but also substantial evidence (more than a mere scintilla but less than a preponderance), independent of that opinion which supports the rejection of contrary conclusions by examining or treating physicians. *Andrews*, 53 F.3d at 1039.

Dr. Lorber testified there are three contradictions to Dr. Emery's opinion found in the record. First, Dr. Lorber opined that clinical examination has not revealed evidence of focal neurologic deficit. (Tr. 30.) Dr. Lorber agreed that, in other words, the MRIs reveal some abnormalities, but the results of the actual physical exams do not correlate to Dr. Emery's opinion. (Tr. 30.) This is Dr. Lorber's opinion, and is not by itself substantial evidence justifying the rejection of Dr. Emery's opinion that the MRIs and exams correlate to the limitations he assessed. The second contradiction identified by Dr. Lorber is Dr. Rose's observation of plaintiff's behavior. (Tr. 30.) This has little to do with the Dr. Emery's opinion and more to do with plaintiff's credibility, discussed above. The third contradiction identified by Dr. Lorber is plaintiff's statement that she moved from Las Vegas to Spokane to care for her parents. (Tr. 30.) Further testimony from plaintiff revealed her parents had people helping them at home and she moved to Spokane "to be with them because they were both sick." (Tr. 39.) There is no evidence that plaintiff has provided any caregiving to her parents. Thus, the only relevant and credible evidence cited by Dr. Lorber contrary to Dr. Emery's opinion is Dr.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -14

Lorber's own opinion. This does not meet the requirement of *Lester* and *Andrews*, supra, requiring more in adopting the opinion of a non-examining physician over the opinion of a treating physician.

Other evidence mentioned in passing by the ALJ includes the opinions of Dr. Hirschauer and Dr. Holper. (Tr. 17.) As pointed out by the parties, the ALJ's statement that Dr. Holper found plaintiff temporarily disabled shortly after the accident is an error, as it was Dr. Thomas in March 2006, shortly after the accident, who indicated plaintiff was "temporarily and totally disabled." (Tr. 251.) Dr. Holper opined in November 2006, "Prognosis appears rather unfavorable at this time realizing persistent complaints so long post injury." (Tr. 277.) The ALJ also cites Dr. Hirschauer's conclusion that surgery was not indicated. (Tr. 438.) Dr. Hirschauer did note that lumbar surgery was not recommended and he did not recommend cervical surgery out of concern that the result might be more headaches and pain, but this sheds little light on the significant limitations identified by Dr. Emery. As a result, the ALJ's determination that Dr. Emery's opinion is not supported by substantial evidence is itself not adequately supported.

Based on the foregoing, the ALJ did not provide legally sufficient justification to reject the opinion of Dr. Emery. The reasons cited by the ALJ are not specific, legitimate reasons supported by substantial evidence. The ALJ did not provide adequate reasons for adopting the opinion of a non-treating, non-examining medical expert over the opinion of a treating physician. As a result, the ALJ erred.

## CONCLUSION

The ALJ's decision is not supported by substantial evidence and free of legal error. A remand is necessary for reconsideration of the credibility finding and the medical opinion evidence. On remand, the additional records submitted to the Appeals Council are part of the record to be considered by the ALJ, as well as any additional evidence the ALJ determines is appropriate.

Accordingly,

**IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 11)** is **GRANTED**. The matter is remanded to the Commissioner for additional proceedings pursuant to sentence four 42 U.S.C. 405(g).

2. Defendant's Motion for Summary Judgment **(Ct. Rec. 20 )** is **DENIED**.

3. An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for plaintiff and defendant. Judgment shall be entered for plaintiff and the file shall be **CLOSED**.

DATED October 20, 2010

                              <u>S/ JAMES P. HUTTON</u>
                          UNITED STATES MAGISTRATE JUDGE